UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br><br>CITY OF DETROIT. | Case No. 23-12600<br>Honorable Shalina D. Kumar |
| DARELL DEON CHANCELLOR,<br>Appellant,<br><br>v.<br><br>CITY OF DETROIT,<br>Appellee | |

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S ORDER ENFORCING BAR DATE AND CONFIRMATION ORDERS AGAINST DARELL CHANCELLOR**

Darell Deon Chancellor appeals from the U.S. Bankruptcy Court for the Eastern District of Michigan's order granting the City of Detroit (the "City")'s motion to enforce the bar date and confirmation orders previously entered in this case against Chancellor. ECF No. 1.

This matter has been briefed. Based on the briefs and the record, the Court finds the matter sufficient for determination without a hearing. *See*

E.D. Mich. LR 7.1(f); Fed. R. Bankr. P. 8012. For the reasons below, the Court affirms the bankruptcy court's decision.

## I. Background

### A. Chancellor's Criminal Proceedings

This matter involves a series of legal proceedings starting with Chancellor's criminal prosecution. On November 2, 2011, Detroit Police Officer Stephen Geelhood submitted an affidavit in support of a search warrant for 5023 32nd Street in Detroit, Michigan, the home of Chancellor's mother. ECF No. 5, PageID.67-68. Chancellor alleges that Geelhood knowingly made false statements in the affidavit, claiming that a confidential informant had reported the presence of heroin at the home and that Geelhood had observed drug transactions take place there. *Id.* at PageID.68. The search warrant was subsequently issued, and in executing it, the police found firearms and roughly half a kilogram of cocaine at the home. *Id.* at PageID.68; *see id.* at PageID.355. Chancellor was absent during the search but was arrested six months later in May 2012 and charged with multiple drug and firearm offenses. *Id.* at PageID.69.

After a November 8, 2012 bench trial in state court, the judge found Chancellor guilty of possession of cocaine. *Id.* at PageID.70. According to Chancellor, the conviction heavily relied on Officer Geelhood's testimony, in

which he falsely identified Chancellor as the individual he saw involved in the drug transactions at the 32nd Street residence. *Id.* at PageID.70-71. At trial, Chancellor challenged the truthfulness of Geelhood's testimony and testified as to his innocence. *See id.* at PageID.70-71, 308-14.

Chancellor was sentenced on December 12, 2012 to 14 years and 3 months to 30 years in prison. *Id.* at PageID.71. Nonetheless, Chancellor maintained that he was innocent. *See Id.* at PageID.203 (Chancellor testifying "That's a hard feeling when you know you ain't done nothing, but a judge convicted you of something and now you stuck in prison trying to figure out how you going to get back home for something you ain't do."). He appealed his conviction in January 2013, arguing that he was wrongly identified as the person selling narcotics at the 32nd Street residence. *Id.* at PageID.335-36, 356. The appeals court concluded that the evidence sufficiently supported the conviction, and Chancellor lost his appeal. *Id.* at PageID.357.

### B. Chancellor's Civil Cases against the City

During Chancellor's incarceration, federal and local government entities investigated the police unit to which Geelhood belonged for corruption, including the falsification of search warrant affidavits and false accusations. *Id.* at PageID.71. In 2019, the county prosecutor's office

reviewed Chancellor's conviction and found that the allegations in Geelhood's affidavit and testimony could not be corroborated. *Id.* at PageID.72. The review revealed that there were no records of criminal activity at the 32nd Street address or of the confidential informant's tip. *Id.* Consequently, the government dismissed the charges against Chancellor, who was then released from prison on March 24, 2020. *Id.* at PageID.72.

Once free, Chancellor initiated parallel litigation against the City and Officer Geelhood by filing substantially similar complaints in state court and this Court.[1] *Id.* at PageID.92-111, 65-85; *see Chancellor v. City of Detroit*, Case No. 20-11992; *Chancellor v. Geelhood*, Case No. 20-11616. Based on allegations that Officer Geelhood's false search warrant affidavit and trial testimony against Chancellor led to his wrongful conviction, Chancellor brought various federal and state law claims—primarily for false arrest, false imprisonment, malicious prosecution, and municipal liability—against the City of Detroit and Officer Geelhood in his individual and official capacity. ECF No. 5, PageID.65-85.

---

[1] The state court case was removed to this Court, leading to the consolidation of that case with the case filed in this Court. *Id.* at PageID.114-16.

### C. The City's Bankruptcy Case

While Chancellor served his prison sentence, the City of Detroit filed for bankruptcy on July 18, 2013, initiating this bankruptcy case. The bankruptcy court then issued a "bar date" order on November 21, 2013. *Id.* at PageID.525-42. That order set February 21, 2014 as the bar date—the deadline by which creditors had to file proofs of claim in this case. *Id.* at PageID.529. The order required any creditor asserting a prepetition claim file a proof of claim by that bar date or it would be barred from pursuing prepetition claims against the City. *Id.* at PageID.538-39. It is undisputed that Chancellor did not file a proof of claim by the February 21, 2014 bar date.

The bankruptcy court later issued a "confirmation" order on November 12, 2014, approving the City's plan for the adjustment of its debts. *Id.* at PageID.560-641, 1725-856. Like the bar date order, the plan discharges prepetition claims and enjoins potential creditors from pursuing them. *Id.* at PageID.616-17.

As mentioned above, Chancellor maintained that he was innocent, consistently asserting that he was wrongly identified as the person selling narcotics. Despite these assertions and his then-ongoing appeal of his conviction, Chancellor did not file a claim in this bankruptcy case before the

bar date. Instead, he brought the above-discussed civil cases against the City in state court and this Court.

To counter Chancellor's civil cases, the City moved in this bankruptcy case to enforce the bar date and confirmation orders, and the bankruptcy court granted that motion on October 4, 2023. *Id.* at PageID.39-53, 409-11. The bankruptcy court found that the events leading to Chancellor's claims all occurred in 2011 and 2012 and that Chancellor could have, through reasonable diligence, ascertained his claims against the City and Officer Geelhood before the City filed its bankruptcy petition. *Id.* at PageID.443. The bankruptcy court concluded that as a result, Chancellor's failure to file a proof of claim barred him from pursuing his civil lawsuits against the City and Officer Geelhood in his official capacity. *Id.* at PageID.451. Chancellor appealed the bankruptcy court's decision to this Court.

## II. Standard of Review

"The district court reviews the bankruptcy court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous." *In re Made in Detroit*, 414 F.3d 576, 580 (6th Cir. 2005). A bankruptcy court's interpretation of a plan it has confirmed is entitled to "full deference," and its exercise of equitable powers to "breathe life" into the provisions of a plan is reviewed under an abuse of discretion standard. *In re Terex Corp.*,

984 F.2d 170, 172 (6th Cir. 1993); *Harper v. Oversight Comm. (In re Conco, Inc.)*, 855 F.3d 703, 711 (6th Cir. 2017) (stating that bankruptcy courts also have the power to interpret the orders that they have previously given).

"Abuse of discretion" is defined as a "definite and firm conviction that the [court below] committed a clear error of judgment. . . . [I]f reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor & City Council v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). Under this standard, the trial court's decision "will be disturbed only if the [trial] court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Elec. Workers Pension Tr. Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir.1997)).

### III. Analysis

Chancellor argues that the bankruptcy court did not properly apply the governing legal test—the "fair contemplation" test—in determining

whether Chancellor's claims arose prepetition such that the City's bankruptcy discharge barred his claims.[2]

At a hearing, the bankruptcy court held that Chancellor's claims against the City and Officer Geelhood, in his official capacity, "all arose before the bankruptcy petition was filed in this Chapter 9 case on July 18, 2013, and, therefore, were discharged." ECF No. 5, PageID.441. To reach this conclusion, the court applied "[t]he fair contemplation test," under which "a claim is considered to have arisen pre-petition if the creditor could have ascertained through the exercise of reasonable due diligence that it had a claim at the time the bankruptcy petition is filed." *Id.* at PageID.442.

The court found that indeed, "Chancellor could have, with the exercise of reasonable diligence, ascertained" the existence of his claims before the City filed for bankruptcy, *id.*, because before the bankruptcy filing, "he certainly knew, or thought he knew, and he believed, that he was the victim of a wrongful conviction, that he was the victim of a conviction that was obtained through what he viewed at the time as false [affidavit and trial] testimony by Officer Geelhood" and he "argued these things

---

[2] The parties do not dispute that if Chancellor's claims arose prepetition, the City's bankruptcy discharge would bar his claims because Chancellor did not take the procedural steps necessary to preserve his claims against the City's bankruptcy discharge.

Page **8** of **11**

vociferously to the courts" before the City's bankruptcy filing. *Id.* at PageID.444. As a result, Chancellor's "claims . . . against the City and Officer Geelhood in his representative capacity are barred and enjoined under the bar date order that the City has cited, the City's plan, and the order confirming plan [sic]." ECF No. 5, PageID.451.

This Court finds no error in the bankruptcy court's analysis. As the bankruptcy court stated, under the fair contemplation test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *See Sanford v. City of Detroit*, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018) (citations omitted)); *see also In re City of Detroit*, 548 B.R. 748, 761 (Bankr. E.D. Mich. 2016) (collecting cases).

In *Sanford,* this Court held that under the fair contemplation test, a plaintiff's claims stemming from his wrongful conviction arose before the City's July 2013 bankruptcy filing. 2018 WL 6331342, at *5. The plaintiff in that case, Davontae Sanford, was convicted of murder and firearm charges in 2008 based on a false confession and asserted his innocence before trial and during post-conviction proceedings. *Id.* at *5. After a police investigation uncovered evidence that Sanford's conviction was the product of police misconduct, Sanford's conviction was vacated in 2016, and

Sanford brought various claims against the City based on his wrongful conviction. *Id.* at *4. However, because Sanford "attempted repeatedly to argue actual innocence before the state courts since at least 2008," he had "certainly contemplated the factual bases" underlying his claims such that they had arose prepetition. *Id.* at *5; *see also Monson v. City of Detroit*, 2019 WL 1057306, at *8 (E.D. Mich. Mar. 6, 2019) (holding claims based on wrongful conviction arose prepetition because, before bankruptcy filing, plaintiff had argued innocence in post-conviction matters and therefore "the eventual invalidation of [plaintiff's] conviction was within [his] fair contemplation prior to the bankruptcy").

Likewise here, the bankruptcy court found that in 2011 and 2012, when his criminal prosecution, trial, and appeal were ongoing, Chancellor had known or believed he was the victim of a wrongful conviction resulting from false testimony, and he had argued as much to the state courts. *See id.*; *see* ECF No. 5, PageID.169, 198, 203-04, 356, 444. The bankruptcy court recognized that Chancellor could not have brought his claims, which all stem from his wrongful conviction, until the charges against him were dismissed in 2020. *See* ECF No. 5, PageID.65-85, 445. But because Chancellor nonetheless knew or believed at all relevant times that he was wrongfully convicted based on what he viewed was false testimony and

consistently maintained his innocence, the bankruptcy court determined that Chancellor reasonably could have ascertained the existence of his claims before the City filed for bankruptcy in 2013. *Id.* at PageID.442; *see also Sanford*, 2018 WL 6331342, at *5 (stating a claim may arise prepetition "even if it is a cause of action that has not yet accrued" (quoting *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009)).

Based on the record and governing law, this Court sees no error in the bankruptcy court's findings, its application of the fair contemplation test, or its determinations that Chancellor's claims arose prepetition and are thus barred by the City's bankruptcy discharge. *See id.* at PageID.451; *Sanford*, 2018 WL 6331342, at *5; *Monson*, 2019 WL 1057306, at *8. Accordingly, the Court cannot disturb the bankruptcy court's decision enforcing the bar date and confirmation orders against Chancellor. *See Gary's Elec.*, 340 F.3d at 378.

## IV. Conclusion

For the reasons above, the Court **AFFIRMS** the bankruptcy court's order enforcing the bar date and confirmation orders against Chancellor.

Dated: September 30, 2024

s/ Shalina D. Kumar  
SHALINA D. KUMAR  
United States District Judge